UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

|  |  |  |
|---|---|---|
| JAMES O'BRIEN, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:22-cv-00066-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| KENTUCKY CABINET FOR HEALTH | ) | **ORDER** |
| AND FAMILY SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on the Motion to Dismiss filed by Defendants Kentucky
Cabinet for Health and Family Services, Jess Farmer, and Cynthia Hildebrandt. [R. 19.]  Minor
Ian Sousis was committed to the custody of the Defendant Cabinet.  The Cabinet placed Ian in
the Children's Home of Northen Kentucky.  While residing in the Children's Home, Ian slipped
away undetected and drowned in the nearby Ohio River.  Plaintiffs aver that the Cabinet, the
Children's Home, and their employees violated Ian's right to substantive due process under the
United States Constitution.  Now, the Defendants assert immunity from suit and contend that the
Plaintiffs fail to state a cognizable claim.  For the following reasons, Defendants' Motion to
Dismiss **[R. 19]** is **GRANTED IN PART and DENIED IN PART.**

# I

"The facts of this case are undeniably tragic."[1]  In July 2021, eight-year-old Ian Sousis was committed to the custody of the Defendant Cabinet by family court order.[2]  [R. 27 at 2.][3] Several months later, the Cabinet placed Ian in the Defendant Children's Home.[4]  *Id.* at 3.  By this point, Ian's tendency to run away was "well known."  *Id.*  Indeed, Ian went on to abscond from the Children's Home at least twice in the months following his placement.  *Id.*  One of these expeditions led Ian to a nearby pond.  *Id.*  Fortunately, Ian was successfully retrieved on both occasions.  *Id.*

Defendants Hildebrandt and Farmer, Cabinet employees, were "well informed" of "Ian's history of elopement and the dangers caused when [Ian] was unsupervised." *Id.* at 5,7.  One month before Ian's death, Ian's grandparents (Mr. and Mrs. O'Brien) "reminded" Children's Home personnel that "over 80% of children diagnosed with autism experience drowning death," and "that Ian would elope when given an opportunity."  *Id.* at 4.  Then—just two days before his death—a staff member found Ian wearing his swimsuit.[5]  *Id.*  Despite these reminders and incidents, the Cabinet, the Children's Home, and their respective employees allegedly did nothing.  *Id.*

---

[1] *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 191 (1989).

[2] The facts and recounted here are taken from Plaintiffs' Second Amended Complaint.  [R. 27.]  The Court views the facts in the light most favorable to the Plaintiffs, making reasonable inferences in their favor.

[3] Plaintiffs allege new facts in their Response to Defendants' Motion to Dismiss.  [R. 25.]  Plaintiffs also attach affidavit and email evidence to their Response brief.  [R. 25-1; R. 25-2.]  However, to avoid converting the Motion to Dismiss into one for summary judgment, the Court cannot consider the new facts and documents provided in the Plaintiffs' Response.  *See* Fed. R. Civ. P. 12(d).

[4] Before this placement, Ian lived in two other Cabinet-approved children's homes in Kentucky.  *Id.* at 2.

[5] Plaintiffs state specifically that on June 2, 2022, "Defendant Simmons" found Ian wearing his bathing suit.  *Id.* at 4.  However, "Simmons" is not a named defendant in this action and Plaintiffs do not clarify who "Simmons" is.

Finally, on June 4, 2022, Ian Sousis fled from the Children's Home for the third time. *Id.* But by the time he was found, it was already too late. *Id.* Ian had drowned in the nearby Ohio River. *Id.*

Ian's Estate, Mr. and Ms. O'Brien, and Anthony and Olivia Sousis (Ian's siblings), bring this action against the Children's Home of Northern Kentucky, the Kentucky Cabinet for Health and Family Services, two Cabinet employees, and various Children's Home employees. *Id.* at 1. The Cabinet employees are Jess Farmer, Ian's caseworker, and Cynthia Hildebrandt, Mr. Farmer's supervisor. *Id.* at 2, 7. As far as the Court can tell, Plaintiffs appear to bring claims against Mr. Farmer and Ms. Hildebrandt in their individual and official capacities. *Id.* at 1.

Plaintiffs allege that Defendants violated Ian's right to substantive due process by failing to act affirmatively to protect him from harm. *Id.* at 5–8. *See* 42 U.S.C. § 1983. They also allege negligence, negligent hiring, training, supervision, and retention, wrongful death, and intentional infliction of emotional distress. *Id.* at 8–11. Now, Mr. Farmer, Ms. Hildebrandt, and the Cabinet move to dismiss these claims. [R. 19.]

## II

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may assert lack of subject-matter jurisdiction as a defense. In so doing, the defendant challenges the Court's power to hear the case before it. When the Court's jurisdiction is challenged in this way, the plaintiff bears the burden of demonstrating that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiffs' complaint. In reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the

light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, a court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## A

The Cabinet and its employees, Jess Farmer and Cynthia Hildebrandt, assert that this Court lacks subject matter jurisdiction because they are immune from suit. The Eleventh Amendment generally affords immunity to government agencies and employees in their official capacities. Additionally, qualified immunity may protect state employees from suit in their individual capacities.

## 1

Defendants urge the applicability of Eleventh Amendment immunity. [R. 19 at 13–15.] The Eleventh Amendment bars suits against states and their agencies in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). For immunity purposes, a suit against a state actor in her official capacity is considered a suit against that employee's office. *Knight*, 532 F.3d at 572. The Eleventh Amendment offers broad protection: states and their agencies enjoy immunity from all claims,

4

"whether for injunctive, declaratory or monetary relief[.]"  *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012).

There are three exceptions to Eleventh Amendment immunity.  First, Congress may abrogate a state's immunity pursuant to its Fourteenth Amendment powers.  *See Alden v. Maine*, 527 U.S. 706, 756 (1999).  Second, a state may waive its immunity.  *See Sossamon v. Texas*, 563 U.S. 277, 284–85 (2011).  Third, under *Ex Parte Young*, officials who are violating or threatening to violate the Constitution "may be enjoined by a Federal court of equity from such action."  209 U.S. 123, 156 (1908).  The *Ex Parte Young* exception applies only when two conditions are met.  First, the plaintiff's suit "must seek prospective relief to end a continuing violation of federal law."  *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002).  Second, the state officials must have "some connection" to that ongoing violation.  *Ex Parte Young*, 209 U.S. at 157–59.  Courts assessing the applicability of *Ex Parte Young* perform a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (internal citation omitted).

None of the exceptions to Eleventh Amendment immunity apply here.  Plaintiffs do not assert abrogation or waiver.  The *Ex Parte Young* exception does not apply either; Plaintiffs do not allege an ongoing violation and do not request prospective relief.  [*See* R. 27 at 11.]  Rather, they seek retrospective monetary damages for discrete, past violations.  In other words, assuming there was an extant or threatened Constitutional violation at some point, that violation ceased with Ian's death and therefore is not ongoing.  Additionally, Plaintiffs do not request an injunction, prospective declaratory judgment, or other form of prospective relief in their

Complaint.  *See Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) ("[T]he [*Ex Parte Young*]

doctrine does not extend to retroactive relief or claims for money damages.").

Because none of the exceptions to Eleventh Amendment immunity apply, the Cabinet

enjoys immunity from suit, as do Cabinet employees Farmer and Hildebrandt in their official

capacities.[6]  Accordingly, Plaintiffs' due process claim against the Cabinet is dismissed, as is

Plaintiffs' official capacity due process claim against Hildebrandt and Farmer.  But Plaintiffs'

individual capacity due process claim against Hildebrandt and Farmer remains, as do the

Plaintiffs' state law claims against all three Defendants.

**2**

Next, Mr. Farmer and Ms. Hildebrandt ask the Court to dismiss the individual capacity

due process claim, asserting entitlement to federal qualified immunity.  [R. 19 at 15.]  Federal

qualified immunity can shield officials sued in their individual capacities from liability for

Constitutional claims.

As a threshold matter, a party asserting immunity under the auspices of Rule 12 faces an

uphill battle.  *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 660 (6th Cir. 2021) ("Although a

defendant's entitlement to qualified immunity is a threshold question to be resolved at the

earliest possible point, that point is usually summary judgment and not dismissal under Rule

12.") (internal citation omitted).  The justification for this is "straightforward:" without the

benefit of discovery, a court may struggle to perform the fact intensive inquiry associated with

qualified immunity.  *Id.* at 660–61.

---

[6] Plaintiffs concede this point in their Response to Defendant's Motion to Dismiss.  [*See* R. 25 at 9] ("The Defendant CFHS, Farmer, Hildebrandt enjoy sovereign immunity/governmental immunity from any damage claim raised by Plaintiff due to the Eleventh Amendment.").

Federal qualified immunity protects "government officials performing discretionary functions" from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Ascertaining whether a government official is entitled to qualified immunity is a two-step inquiry. A court must first "determine whether the plaintiff has alleged facts which, when taken in the light most favorable to [him], show that the defendant-official's conduct violated a constitutionally protected right[.]" *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 727 (6th Cir. 2011) (internal citation omitted). Next, the Court should "determine whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right." *Id.*

**a**

First, the Court considers whether the Plaintiffs have alleged the violation of a constitutionally protected right. Plaintiffs contend that Farmer and Hildebrandt violated Ian's Constitutional right to substantive due process when they shirked their statutory obligations by failing to supervise and communicate. [R. 27 at 5–7.] Defendants disagree, citing the general prohibition on due process liability for omissions. [R. 19 at 7–8; R. 31 at 4–7.]

42 U.S.C. § 1983 provides a plaintiff with a mechanism for redress against a government actor who violates the Constitution. "[S]ection [1983] is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Accordingly, a § 1983 analysis necessarily begins by "isolat[ing] the precise [C]onstitutional" right at issue. *Id.* at 140. Ordinarily, the government's failure to protect an individual from harm does not give rise to a Constitutional violation. *See DeShaney v.*

7

*Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989); *Harris v. McRae*, 448 U.S. 297, 317–18 (1980).  There are two exceptions to this general rule.  Plaintiffs urge the applicability of both exceptions.  [R. 25 at 4.]  As to the first exception, Plaintiffs' argument fails.  But as to the second, Plaintiffs state a claim.

<strong>i</strong>

First, Plaintiffs point to the "state-created danger" exception.  "Liability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998).  "[W]hile the state generally does not shoulder an affirmative duty to protect its citizens from private acts of violence, it may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts." *Id.*

Plaintiffs' state-created danger argument fails for two reasons.  First, they don't allege a state-created danger.  Ian had a known history of running away before the Cabinet assumed custody.  [*See* R. 27 at 5 ("When the Plaintiff was committed to the Cabinet, the Defendant Farmer was aware of the Plaintiff's history of eloping when unsupervised.")]; *see also id.* at 6 ("When the Plaintiff was committed to the Cabinet, the Defendant Hildebrandt [sic] was aware of the Plaintiff's history of eloping when unsupervised.").  The danger posed by Ian's habit therefore existed before Farmer and Hildebrandt's involvement.  *Id.*  And Plaintiffs do not allege that the risk to Ian was significantly less before he was committed to the Cabinet.  Hence, they fail to show that Hildebrandt and Farmer created or greatly increased the risk posed to Ian by his absconding tendencies.  *See Barefield v. Hillman*, No. 20-6002, 2021 WL 3079693, at *4 (6th

8

Cir. July 21, 2021) (finding no state-created danger to an often-eloping child in state custody when the child had a history of running away before the state took custody).

Second, Plaintiffs do not allege that Farmer or Hildebrandt acted affirmatively. Rather, they state that Farmer and Hildebrandt repeatedly failed to protect Ian from harm. But "failure to act is not an affirmative act under the state-created danger theory." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003); *see id.* (collecting cases). Accordingly, Plaintiffs' state-created danger argument is a nonstarter.

**ii**

As for their second argument, Plaintiffs carry the day. They correctly urge the applicability of the custodial exception to the general rule against due process liability for omissions. [R. 25 at 4–8.]

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199–200; *see also Youngberg v. Romeo*, 457 U.S. 307, 314–25 (1982). Out of this duty arises a "right to be free from the infliction of unnecessary harm to children in state-regulated foster homes." *Meador v. Cabinet for Hum. Res.*, 902 F.2d 474, 476 (6th Cir. 1990); *see also Lintz v. Skipski*, 25 F.3d 304, 305 (6th Cir. 1994). This right is violated when the state exhibits "deliberate indifference" to the risk of harm to a child in its care. *Lintz*, 25 F.3d at 305–07; *see also Moore v. Lake Cnty. Dep't of Job & Fam. Servs.*, 364 F. App'x 194, 196 (6th Cir. 2010). "Deliberate indifference is more than just negligence and is akin to subjective recklessness." *Est. of Q.W. v. Lucas Cnty. Child. Servs.*, No. 3:22-CV-00671-JGC, 2023 WL 4564381, at *9 (N.D. Ohio July 17, 2023). To make a showing

9

of recklessness, the plaintiff must demonstrate that state actors "knew of facts from which they could infer a substantial risk of serious harm, that they did infer it, and that they acted with indifference toward the individual's rights." *Id.* (quoting *Guertin v. State of Mich.*, 912 F.3d 907, 926 (6th Cir. 2019). The prototypical example of a reckless state official is one who places a child in a foster home, "learn[s] of physical or sexual abuse" in that home, and nevertheless "fail[s] to act." *Brown v. Hatch*, 984 F. Supp. 2d 700, 712 (E.D. Mich. 2013); *see also Est. of Mikinah Smith v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, No. 1:06cv362, 2007 WL 2572184, at *7–8 (S.D. Ohio Aug. 31, 2007); *Lethbridge v. Lula Belle Stewart Ctr.*, No. 06-14335, 2007 WL 2713733, at *5 (E.D. Mich. Sept. 17, 2007); *R.S. by V.H. v. Lucas Cnty. Child. Servs.*, No. 22-3501, 2022 WL 17730531, at *5 (6th Cir. Dec. 16, 2022).

Although this case is "different in kind" from the physical and sexual abuse line of cases, the Plaintiffs allege deliberate indifference. *Contra Brown*, 984 F. Supp. 2d at 712. According to the Complaint, Defendants Hildebrandt and Farmer were "well informed" of Ian's tendencies and the risks therein. [R. 27 at 5, 7.] In fact, these Defendants allegedly knew of Ian's habit back in July 2021, when Ian was committed to the Cabinet's custody. *Id.* at 5, 6. Further, Farmer and Hildebrandt knew that the O'Briens' repeated warnings were based on more than mere neuroses. These Defendants were aware that Ian absconded from the Children's Home twice in the six or seven months before his death. *Id.* at 3–4. They allegedly knew that after one of these expeditions, Ian was found in a body of water. *Id.* And it is reasonable to infer that they knew the Children's Home was near the Ohio River. *Id.* Just one month before Ian's death, Plaintiffs warned several personnel that children with autism are at a heightened risk of drowning

death.[7]  *Id.* at 4.  Then, just two days before Ian drowned, an employee of the Children's Home found Ian "wearing his bathing suit."  *Id.*   Still, Farmer and Hildebrandt allegedly did nothing. *Id.* at 5–8.  Their inaction was not just unwise: it allegedly violated these Defendants' statutory or regulatory duties.  *Id.* at 6, 7.  In particular, Defendant Farmer allegedly shirked his regulatory obligations when he failed to monitor Ian and communicate with the O'Briens.[8]  *Id.*  at 6. Defendant Hildebrandt also allegedly violated her regulatory duties when she failed to ensure that Farmer was complying with his obligations.  *Id.* at 7–8.

This is enough to state a claim.  The Plaintiffs have plausibly alleged that Defendants Farmer and Hildebrandt "knew of facts from which they could infer a substantial risk of serious harm, [] did infer it, and [] acted with indifference toward [Ian's] rights."  *Guertin*, 912 F.3d at 926.  Defendants correctly point out that it is unclear from the pleadings how much of the Children's Home's knowledge can be fairly imputed to Farmer and Hildebrandt.  [R. 19 at 9–10.] But such a question can only be answered by permitting the action to "proceed to discovery." [R. 25 at 12].  Having stated a due process claim, the Plaintiffs successfully allege a violation of a Constitutionally protected right.  But the qualified immunity analysis is not over yet.  Next, the Court must determine whether the right was clearly established at the time of the violation.

---

[7] The Complaint does not explicitly state that Ian had autism.  The Court makes reasonable inferences in the Plaintiffs' favor on a motion to dismiss.   Accordingly, the Court will infer that Ian had autism and that the warning about autism and drowning was meant and understood to apply to Ian.

[8] Even though Plaintiffs reference state regulations generally, they do not provide specific state laws for the Court to consider.  The Court will not go on a fishing expedition for those regulations at the motion to dismiss stage.  *See, e.g.*, *Franchi v. SmileDirectClub, Inc.*, 633 F. Supp. 3d 1046, 1078 n.15 (M.D. Tenn. 2022) (explaining that a court can consider public records on motion to dismiss review so long as there are "no material disputed issues of fact regarding the relevance of the document" (quoting *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012))).  Because there may turn out to be a dispute about which state regulations applied to confer duties upon the Defendants, review of regulations is better suited to a summary judgment review.

### b

As to that question, the law is settled: the right was clearly established. *See Meador*, 902 F.2d at 476 ("We hold that due process extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes."); *Lintz*, 25 F.3d at 305–307 (explaining that *Meador* created a clearly established right); *Est. of Mikinah Smith*, 2007 WL 2572184, at *8 (denying qualified immunity because *Lintz* and *Meador* "establish that the constitutional right [of children in state-regulated foster homes to be free from unnecessary harm] was, in fact, clearly established."); *see also Lintz*, 25 F.3d at 307 ("[D]eliberate indifference" is required to make out a violation of the "clearly established" "substantive due process right[.]").  Because the Court finds that the Plaintiffs have alleged a violation of a clearly established right, the Court will deny Farmer and Hildebrant's request to dismiss the due process claim on qualified immunity grounds.  Now, the Plaintiffs' due process claim remains as to individual capacity Defendants Hildebrandt and Farmer.  But the due process claim against the Defendant Cabinet is gone.  Similarly, the due process claim against Farmer and Hildebrandt in their official capacities has been dismissed.  The pendent state law claims remain as to all three of these Defendants.

### B

But those state claims may not proceed until the Court addresses Defendants' several immunities.  Defendants Cabinet, Farmer, and Hildebrant ask the Court to dismiss these claims on immunity grounds.  Alternatively, they assert that none of Plaintiffs' state law allegations can survive a motion to dismiss.  First, the Court addresses the Defendants' various state law immunities.

**1**

Under the Kentucky Constitution, state agencies "operating under the direction and control of the central state government" are immune from suit (absent explicit waiver). *Stratton v. Commonwealth*, 182 S.W.3d 516, 519 (Ky. 2006). As one of these agencies, "the Cabinet is entitled to governmental immunity for performance of governmental functions." *Birdwhistell v. Bone*, No. 2008-CA-002076-MR, 2011 WL 831428, at *3 (Ky. Ct. App. Mar. 11, 2011). Because the Cabinet is being sued in connection with its governmental duties—and not proprietary functions—it enjoys complete immunity from the Plaintiffs' state law claims. *Yanero v. Davis*, 65 S.W.3d 510, 519–20 (Ky. 2001). Further, to the extent the state claims are directed at Farmer and Hildebrandt in their capacities as Cabinet employees, these Defendants also enjoy total immunity. *Id.* at 522 ("[W]hen an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled[.]"). Accordingly, the official capacity state claims against Defendants Hildebrandt and Farmer are dismissed, as are the state claims against the Defendant Cabinet.

Now, Plaintiffs' federal and state claims against the Cabinet are gone. The official capacity federal and state claims against Hildebrandt and Farmer are likewise dismissed. The only remaining claims are the individual capacity federal and state claims against Defendants Hildebrandt and Farmer.

**2**

Unlike the surviving due process claim, the remaining state law claims have yet to run the qualified immunity gauntlet. Defendants Hildebrandt and Farmer ask the Court to dismiss the

13

individual capacity state claims, asserting entitlement to qualified immunity under Kentucky law. [R. 19 at 16–18.]

<strong>a</strong>

"[W]hen sued in their individual capacities, public officers and employees enjoy only qualified official immunity[.]" *Yanero*, 65 S.W.3d at 522.  Qualified immunity extends "to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Id.* (internal citations omitted).  Consistent with its provisional nature, the immunity does not apply to the "negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.*  While a ministerial act is one the "employee has no choice but to do," a discretionary act generally involves a "quasi-judicial or policy-making decision[]." *Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014).

<strong>b</strong>

At the pleading stage, the Court cannot say as a matter of law that qualified immunity applies.  Indeed, because Kentucky state qualified immunity requires a fact intensive inquiry, courts may struggle to determine its application without the benefit of discovery.  *See B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 655 (W.D. Ky. 2019).  Plaintiffs' Complaint alleges that Defendant Farmer had a regulatory duty to supervise Ian's placement and communicate with the O'Briens about Ian's progress.  [R. 27 at 3, 6.]  Further, Plaintiffs state that Hildebrandt had a pre-existing duty to ensure Farmer's compliance with his monitoring and communication

14

obligations. *Id.* at 7–8.  However, Farmer and Hildebrandt allegedly failed to comport with any of these duties and as such violated "the Cabinet's regulations." *Id.* at 3.

These contentions refer to ministerial acts.  The allegations as to Defendant Farmer concern a failure to follow pre-established rules, not a discretionary judgment call about whether to promulgate those rules. *Brown v. S.F.*, No. 2011-CA-001898-MR, 2013 WL 1697766, at *7 (Ky. Ct. App. Apr. 19, 2013) ("Promulgation of rules is a discretionary function; enforcement of those rules is a ministerial function.") (citing *Yanero*, 65 S.W.3d at 529)).  Similarly, the allegation that Hildebrandt failed to ensure Farmer's compliance also sounds in a ministerial obligation. *Hedgepath v. Pelphrey*, 520 F. App'x 385, 391 (6th Cir. 2013) ("[A]lthough deciding on the content of policies and training is a discretionary function, the training of employees to adhere to their duties once that content is decided is a ministerial function." (citing *Yanero*, 65 S.W.3d at 529)).

Hildebrandt and Farmer resist this characterization, asserting that they enjoy immunity because they had "discretion as to how to carry out their assigned duties[.]"  [R. 19 at 18.]  But this argument misses the mark.  "An act is not necessarily 'discretionary' just because the officer performing it has some discretion with respect to the means or method to be employed." *Yanero*, 65 S.W.3d at 522; *see also id.* at 529 ("[E]nforcement of a known rule . . . . is a ministerial function.").

Because Plaintiffs allege the negligent violation of ministerial duties, the Court cannot say that these Defendants are entitled to immunity at the Rule 12 stage. *See Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 660 (6th Cir. 2021) ("Although a defendant's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.") (internal citation omitted).

15

Accordingly, the Court declines to dismiss the state allegations against Farmer and Hildebrandt on qualified immunity grounds.

C

But those state claims require further consideration.  Next, Defendants Hildebrandt and Farmer assert that none of these claims can withstand 12(b)(6) scrutiny.  [R. 19 at 8–13.]

1

As to the negligence claim, Defendants' argument fails.  It's easy to see why: the Court has already determined that Plaintiffs state a claim for deliberate indifference (loosely defined as recklessness).  *See supra* II.A.2.  Where allegations are sufficient to state a claim for recklessness, they are certainly sufficient to state a claim for negligence.  *Wright v. House of Imps., Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) ("A common law negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury."); *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (explaining that deliberate indifference requires more than "simple or even heightened negligence").  Accordingly, the Court declines to dismiss Plaintiffs' negligence claim as to Farmer and Hildebrandt.

2

With respect to the remaining state claims, however, the Defendants are correct. Defendants next ask the Court to dismiss Plaintiffs' claims for wrongful death, negligent hiring, negligent training, negligent supervision, and negligent retention.  [R. 19 at 11.]  Defendants point out that the Complaint appears to direct these claims only at the Defendant Childrens Home.  *Id.*  The Plaintiffs agree.  [R. 25 at 9.]  Plaintiffs ask the Court to dismiss these claims

16

without prejudice as to the movants. *Id.* The parties being in agreement, the Court will dismiss these claims as to the moving Defendants.

**3**

Finally, Defendants ask the Court to dismiss the intentional infliction of emotional distress (IIED) claim for two reasons. [R. 19 at 11–13.] First because it cannot be pled in conjunction with the other torts, and second because it fails to state a claim. *Id.* Defendants are wrong on the first count; right on the second.

In Kentucky, IIED (also termed the tort of "outrage") is considered a "gap filler" tort. *Grace v. Armstrong Coal Co.*, No. 4:08-cv-109-JHM, 2009 WL 366239, at *3 (W.D. Ky. Feb. 13, 2009). Hence, "if an action can lie in a 'traditional tort,' 'the tort of outrage will not lie.'" *Childers v. Geile*, 367 S.W.3d 576, 581 (Ky. 2012) (quoting *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App. 1993)). In other words, IIED "cannot be pled by itself, in tandem with another tort, or in the alternative as long as some other tort with adequate relief fits the facts." *Grace*, 2009 WL 366239, at *3. As a consequence, "a litigant cannot prevail on both a negligence claim and an intentional infliction of emotional distress claim on the same set of facts." *Childers*, 367 S.W.3d at 581. Despite this prohibition on a negligence and IIED dual recovery, a plaintiff may plead IIED in the alternative to negligence. *Id.* at 581–82. Moreover, the Plaintiffs were well within their rights to plead IIED in the alternative.

Still, alternative pleading is not a bulwark against 12(b)(6) scrutiny. *See, e.g.*, *Lovins v. Hurt*, No. 11-216-JBC, 2011 WL 5592771, at *3 (E.D. Ky. Nov. 16, 2011) (dismissing an alternative IIED claim because it failed to plead the required elements). Mr. Farmer and Ms. Hildebrandt correctly point out that the Plaintiffs fail to state a claim. To prove IIED, the

17

plaintiff must show (1) "intentional or reckless" conduct by the defendant; (2) that the conduct was "outrageous and intolerable in that it offends against generally accepted standards of decency and morality;" (3) a causal link between the conduct and the plaintiff's emotional distress; and (4) that plaintiff's emotional distress is severe. *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999).

With respect to Farmer and Hildebrandt, the Complaint falls short of this standard. Plaintiffs assert that the Children's Home and its employees acted intentionally and outrageously when they failed to inform the O'Briens of Ian's elopement and death. [R. 27 at 10.] Because the Children's Home did not contact them for at least a few hours after Ian died, the Plaintiffs were forced to learn of his passing from other sources.[9] *Id.* Be that as it may, these allegations do not state a claim against Farmer and Hildebrandt. First, the allegations refer only to the Children's Home and its employees (not the Cabinet and its employees). Second, the Complaint does not allege that Farmer and Hildebrandt even knew of Ian's escape or death in the hours after it occurred. Nor does it state that Farmer and Hildebrandt intentionally withheld that information. Because the Complaint does not allege either that Farmer and Hildebrandt had contemporaneous knowledge or that they intentionally withheld that knowledge, the Court will dismiss the alternatively pled IIED claim against them.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

---

[9] The O'Briens state additional facts about these circumstances in their Response to the Motion to Dismiss. [R. 25 at 10–11.] But the Court cannot consider these new facts on 12(b)(6) review. *Neff v. Standard Fed. Bank*, No. 2:06-cv-856, 2007 WL 2874794, at *9 (S.D. Ohio Sept. 27, 2007).

1. Defendants' Motion to Dismiss **[R. 19]** is **GRANTED IN PART** and **DENIED IN PART**;

2. Defendants' request to dismiss Plaintiffs' procedural due process, equal protection, and loss of consortium claims is **DENIED AS MOOT** based on Plaintiffs' Amendment to their Complaint;

3. Plaintiffs' Fourteenth Amendment claim is **DISMISSED** as to the Defendant Cabinet;

4. Plaintiff's negligence claim is **DISMISSED** as to the Defendant Cabinet;

5. Plaintiffs' negligent hiring, supervision, training, and retention claims against are **DISMISSED WITHOUT PREJUDICE** as to Defendants Hildebrant, Farmer, and the Cabinet;

6. Plaintiff's wrongful death claim is **DISMISSED WITHOUT PREJUDICE** as to Defendants Hildebrandt, Farmer, and the Cabinet;

7. Plaintiffs' intentional infliction of emotional distress claim is **DISMISSED** as to Defendants Hildebrandt, Farmer, and the Cabinet;

8. All claims against the Kentucky Cabinet for Health and Family Services being resolved, the Cabinet is **DISMISSED** as a Defendant in this Action.

This the 27th day of February, 2024.

Gregory F. Van Tatenhove
United States District Judge

19