UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| JAMES O'BRIEN, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> CHILDREN'S HOME OF NORTHERN KENTUCKY, *et al.*, <br><br> Defendants. | Civil No. 3:22-cv-00066-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

While residing in the Children's Home of Northern Kentucky, a child slipped away undetected and drowned in the nearby Ohio River. His surviving relatives filed suit. But it took them seventeen months to achieve service on Defendant Johnson. Because they fail to show good cause for the delay, Ms. Johnson's Motion to Dismiss **[R. 46]** is **GRANTED.**

I

"The facts of this case are undeniably tragic." *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 191 (1989). In July 2021, eight-year-old Ian Sousis was committed to the custody of the Kentucky Cabinet for Health and Family Services by family court order.[1] [R. 27 at 2.] The Cabinet placed Ian in the Children's Home of Northern Kentucky. *Id.* at 3. By this point, Ian's tendency to run away was "well known." *Id.* Indeed, Ian went on to abscond from the Children's Home at least twice in the months following his placement. *Id.* One of

---

[1] The facts recounted here are taken from the Court's Memorandum Opinion and Order on the Defendants' Motion to Dismiss at R. 34.

these expeditions led Ian to a nearby pond. *Id.* Fortunately, Ian was successfully retrieved on both occasions. *Id.*

Defendants Hildebrandt and Farmer, Cabinet employees, were "well informed" of "Ian's history of elopement and the dangers caused when [Ian] was unsupervised." *Id.* at 5,7. One month before Ian's death, Ian's grandparents (Mr. and Mrs. O'Brien) "reminded" Children's Home personnel that "over 80% of children diagnosed with autism experience drowning death," and "that Ian would elope when given an opportunity." *Id.* at 4. Then—just two days before his death—a staff member found Ian wearing his swimsuit.[2] *Id.* Despite these reminders and incidents, the Cabinet, the Children's Home, and their respective employees allegedly did nothing. *Id.* Finally, on June 4, 2022, Ian fled from the Children's Home for the third time. *Id.* But by the time he was found, it was already too late. *Id.* Ian had drowned in the nearby Ohio River.[3] *Id.*

Ian's Estate, Mr. and Ms. O'Brien, and Anthony and Olivia Sousis (Ian's siblings), brought this action against the Children's Home of Northern Kentucky, the Kentucky Cabinet for Health and Family Services, two Cabinet employees, and various Children's Home employees. *Id.* at 1. The Cabinet and its employees moved to dismiss. [R. 19.] Rather than joining in the motion, the Children's Home filed an Answer. [R. 29.] On February 28, 2024, the Court granted and denied in part the motion to dismiss. [R. 34.] In so doing, it dismissed the Cabinet as a Defendant in this action. *Id.* It further dismissed the Cabinet employees in their official capacities, while permitting certain individual capacity claims against them to proceed. *Id.*

---

[2] Plaintiffs state specifically that on June 2, 2022, "Defendant Simmons" found Ian wearing his bathing suit. *Id.* at 4. However, "Simmons" is not a named defendant in this action and Plaintiffs do not clarify who "Simmons" is.
[3] Ian was nine years old when he passed away. *Id.* at 2, 4.

2

Upon resolving the Motion to Dismiss, the Court noticed sua sponte that Defendant Kristina Johnson, a Children's Home employee, did not appear to have been served. On its own motion, the Court directed the Plaintiffs to show cause why the claims against her should not be dismissed for failure of service. [R. 35.] The O'Briens responded that, "[a]fter exhausting numerous avenues," they had finally located Ms. Johnson's correct address. [R. 37.] They sought thirty additional days in which to serve Ms. Johnson. *Id.* The Court discharged the show cause and granted the extension. [R. 40.] Now that Ms. Johnson has been served, she requests dismissal for want of proper service. [R. 46.]

In their briefing on Ms. Johnson's Motion, the parties provide additional information about the delay. After filing suit in November 2022, the O'Briens attempted service on all defendants. [R. 50.] But they were unaware of Ms. Johnson's address. *Id.* Consequently, the O'Briens achieved service on every defendant except for Ms. Johnson. *Id.*

Several months then lapsed with no apparent progress. *Id.* Finally, in July 2023, the O'Briens propounded an interrogatory to the Defendant Children's Home requesting Johnson's address. *Id.* But the Children's Home refused to respond (presumably because no scheduling order had been entered). *Id.* Almost a year later, in March 2024, the Court entered its Show Cause Order. [R. 35.] Plaintiffs provide no explanation for their failure to request an extension of time or otherwise act between July 2023 and March 2024. [R. 50.] Nonetheless, they state that the Court's March 2024 Show Cause Order prompted them to investigate further and ultimately locate Johnson's up to date address. *Id.* In March 2024, the O'Briens contacted a social worker from the Cabinet, who referred them to the Cabinet's General Counsel. *Id.* The General Counsel then "graciously provided the last known address of Kristina Johnson." *Id.* Armed with this information, the Plaintiffs finally achieved service in April 2024. *Id.*

3

## II

The Court will construe Ms. Johnson's 4(m) Motion as one for dismissal for insufficient service of process under Rule 12(b)(5). *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (4th ed. 2024) ("A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery, the lack of delivery, or the timeliness of delivery of the summons and complaint."); *Schmidt v. Jefferson Cnty. Bd. of Educ.*, No. 3:13-CV-00694-TBR, 2014 WL 1877669, at *1 (W.D. Ky. May 9, 2014) ("A Rule 12(b)(5) motion is the proper vehicle for challenging the failure to deliver a summons and complaint in accordance with Rule 4(m).").

"When a defendant files a motion to dismiss under Rule 12(b)(5), the plaintiff 'bears the burden of executing due diligence in perfecting service of process and showing that proper service was made.'" *Spencer v. Caracal Int'l, LLC*, 516 F. Supp. 3d 755, 758 (M.D. Tenn. 2021) (quoting *Mullins v. Kalns*, No. 99-4301, 2000 WL 1679511, at *3 (6th Cir. Nov. 3, 2000)). "[A] district court has broad discretion to dismiss a complaint for insufficiency of service of process." *HPIL Holding, Inc. v. Zhang*, 734 F. Supp. 3d 664, 694 (E.D. Mich. 2024). This dismissal mechanism is not merely formalistic: "[w]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *Boulger v. Woods*, 306 F. Supp. 3d 985, 992 (S.D. Ohio 2018), *aff'd*, 917 F.3d 471 (6th Cir. 2019) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)). And without personal jurisdiction, a federal court is "'powerless to proceed to an adjudication.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)); *see also Friedman v. Est. of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991)

("[T]he requirement of proper service of process 'is not some mindless technicality.'") (internal citation omitted).

## A

Federal Rule of Civil Procedure 4(m) directs the parameters of the Court's 12(b)(5) analysis. Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Courts undertaking a 4(m) analysis first "determine whether the plaintiff has shown good cause for the failure to effect service." *Stewart v. Tenn. Valley Auth.*, 238 F.3d 424 (6th Cir. 2000) (Table). If he has, the rule's mandatory language requires the court to extend the time for service. *Id.*

However, "if the plaintiff has not shown good cause, the court must either (1) dismiss the action or (2) direct that service be effected within a specified time." *Id.* "In other words, the court has discretion to permit late service even absent a showing of good cause." *Id.*; *see also United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022), *cert. denied sub nom. United States & Mich., ex rel. Mohamad Sy v. Oakland Physicians Med. Ctr., LLC*, 143 S. Ct. 782 (2023) ("[A]bsent a finding of good cause, the court retains discretion as to whether or not to enlarge that timeframe."). Seven factors guide district courts in assessing the propriety of a discretionary extension. *See id.* at 569 (providing seven factors district courts should consider "when deciding whether to grant a discretionary extension of time in the absence of a finding of good cause").

Good cause is "a reasonable, diligent effort to timely effect service of process." *Johnson v. Smith*, 835 F. App'x 114, 115 (6th Cir. 2021). "'[L]ack of prejudice and actual notice are insufficient' to establish good cause, as are 'mistake of counsel or ignorance of the rules.'" *Thul v. Haaland*, No. 22-5440, 2023 WL 6470733, at *2 (6th Cir. Mar. 1, 2023), *cert. denied*, 144 S. Ct. 96 (2023) (internal citation omitted). The Sixth Circuit has identified "three scenarios" giving rise to good cause: "(1) when the defendant has intentionally evaded service; (2) when the district court has committed an error; and (3) when a pro se plaintiff suffers from a serious illness." *Id.* "The common denominator in these situations 'is that something outside the plaintiff's control prevents timely service.'" *Id.*

Consistent with this principle, "mere inadvertence on the part of counsel" does not justify a mandatory extension. *See Davis v. Brady*, 9 F.3d 107, 3 (6th Cir. 1993) (Table); *see also Friedman*, 929 F.2d at 1157 ("[C]ounsel's inadvertent failure or half-hearted efforts to serve a defendant within the statutory period does not constitute good cause."). For example, the fact that parties had discussed a waiver of formal service did not generate good cause, even in conjunction with counsel's personal and professional problems. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521–22 (6th Cir. 2006); *see also Tombragel v. Oral & Facial Surgery Assocs., Drs. Perry, Morrison & Waters, LLC*, No. 1:24-CV-14, 2024 WL 3638118, at *2 (S.D. Ohio Aug. 2, 2024) ("[L]ack of knowledge of a defendant's address is not good cause for failing to serve that defendant (at least absent some evidence suggesting that the defendant is affirmatively taking steps to conceal that address)."); *Tines v. PepsiAmericas, Inc.*, 265 F.R.D. 285, 287–88 (W.D. Tenn. 2010) (counsel's "calendar error" was the product of carelessness and did not establish good cause); *Bradford v. Bracken Cnty.*, 767 F. Supp. 2d 740, 754 (E.D. Ky. 2011) (defendant's refusal to waive service did not justify plaintiffs' failure to comply with Rule 4(m)).

**B**

**1**

The O'Briens have not demonstrated a reasonable, diligent attempt to effect service on Defendant Johnson. First, there is no indication that a factor outside the Plaintiffs' control was responsible for the lengthy delay. Second, the prototypical illustrations of good cause are not applicable here. There is no suggestion that Ms. Johnson has intentionally evaded service. The O'Briens are not pro se. Nor do they contend that the Court committed an error establishing good cause. In fact, they offer no explanation for their apparent failure to take any efforts to locate Ms. Johnson's address between July 2023 and March 2024. Nor do they explain the lapse in service efforts between 2022 and 2023.

Instead, the Plaintiffs rely heavily on the fact that the Children's Home refused to provide an address back in 2023. But that fact alone fails to explain the longevity of the delay. And, even if it did, a "plaintiff may not rely on another's delay in supplying needed information, but is obligated to pursue alternative methods in finding and serving defendant." *Friedman*, 929 F.2d at 1157 (citing *Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir. 1988)); *see also Tombragel*, 2024 WL 3638118, at *2 ("[L]ack of knowledge of a defendant's address is not good cause for failing to serve that defendant (at least absent some evidence suggesting that the defendant is affirmatively taking steps to conceal that address)."). Further, upon receipt of the Court's Show Cause Order, Plaintiffs managed to achieve service relatively promptly. The timing of this accomplishment suggests that the cause of the delay was within Plaintiffs' counsel's control all along. *See Belhasen v. Hollon*, No. CV 17-279-DLB, 2018 WL 2347067, at *3 (E.D. Ky. May 23, 2018) (finding delay was within counsel's control when, upon receipt of a Show Cause Order, he effected service promptly); *Friedman*, 929 F.2d at 1157 ("[C]ounsel's inadvertent failure or half-hearted efforts to serve a defendant within the statutory period does not constitute good cause.").

**2**

**a**

Faced with a dearth of good cause, the Court next considers whether the *Oakland Physicians* analysis weighs in favor of a discretionary extension. *See Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 569. "[W]hen deciding whether to grant a discretionary extension of time in the absence of a finding of good cause[,]" district courts in the Sixth Circuit consider the following factors:

> (1) whether an extension of time would be well beyond the timely service of process; (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit; (3) whether the defendant had actual notice of the lawsuit; (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, *i.e.*, would the plaintiff's lawsuit be time-barred; (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies; (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*Id.*

**b**

Here, the balance of the *Oakland Physicians* factors weighs heavily against an extension. First, an extension would markedly transgress Rule 4(m)'s ninety-day mandate. Plaintiffs required approximately seventeen months to effect service, meaning they incurred a delay of about fourteen months following the expiration of the ninety-day period. The Court is not aware of a case in this circuit in which a judge overlooked a fourteen-month delay in effecting service. Nor do the plaintiffs cite any such case. *Cf. Nafziger*, 467 F.3d at 521–22 (delay of over six months necessitated dismissal); *Tombragel*, 2024 WL 3638118, at *2 (four-month extension would be excessive and unjustifiable). Consequently, the first factor militates against a discretionary extension.

Second, an extension would prejudice Ms. Johnson beyond the inherent prejudice borne by all civil defendants. Defendant Johnson has been absent from this lawsuit for seventeen months. An omnibus Motion to Dismiss has been argued and ruled upon in her absence. Ms. Johnson lacked an opportunity to join in the motion or raise additional arguments that other Defendants may not have had an incentive to raise. Because the other Defendants' litigation interests do not necessarily align with Ms. Johnson's, it cannot be said that their motion adequately represented Ms. Johnson during her absence. And to the extent settlement discussions have been taking place over the past seventeen months, Ms. Johnson missed out on those, too. Finally, as Ms. Johnson points out, "extending this proceeding by nearly two years" risks a "deterioration in [] memory[,]" and "decreas[es] the likelihood of accurate fact recollections." [R. 51.] Although discovery has not yet commenced, requiring Ms. Johnson to defend herself at this stage of litigation would raise serious fairness and due process concerns. Accordingly, the second factor counsels against a discretionary extension.

The third factor, actual knowledge, produces a similar result. The O'Briens emphasize that the Children's Home has appeared and defended itself, suggesting, of course, that it had actual knowledge of the lawsuit. [R. 50.] That argument is tautologically correct but irrelevant in application. *Oakland Physicians* asks whether the improperly served defendant had actual knowledge of the lawsuit—not whether properly served co-defendants were aware of the complaint. Though it's possible the Children's Home (or another defendant) informed Ms. Johnson of the action, the Plaintiffs produce no evidence to that effect. Further, the fact that Ms. Johnson never appeared or filed anything until May 2024 suggests she may have lacked actual knowledge. Accordingly, the third factor cuts against an extension.

9

Conversely, the fourth factor weighs in favor of the O'Briens. It appears that most or all of the Plaintiffs' claims against Ms. Johnson are subject to a one-year statute of limitations. *See Phillips v. Lexington-Fayette Urb. Cnty. Gov't*, 331 S.W.3d 629, 634 (Ky. Ct. App. 2010) ("Because [plaintiff] alleges negligence, the applicable statute of limitations is one year pursuant to KRS 413.140(1)(a)."). Since that period has lapsed, a dismissal without prejudice would, as a practical matter, bar the O'Briens' claims against Defendant Johnson. *See DeLong v. Arms*, 251 F.R.D. 253, 255 (E.D. Ky. 2008), *aff'd*, 369 F. App'x 654 (6th Cir. 2010) ("[A]ny dismissal ordered [under Rule 4(m)] after expiration of the statute of limitations for failure to establish good cause will be, in effect, with prejudice since plaintiff will be precluded from commencing a new action." (quoting *Petty v. Cnty. of Franklin*, 478 F.3d 341, n.3 (6th Cir. 2007))). Certainly, that is no small sanction. But it wouldn't foreclose the possibility of relief. Because other defendants remain, it is "unlikely that Rule 4(m) dismissal of [Ms. Johnson] would be fatal to Plaintiffs' attempt to recover damages[.]" *Bradford*, 767 F. Supp. 2d at 757. On balance, the potential prejudice to the O'Briens weighs moderately in favor of an extension.

But the fifth factor, good faith and diligence, strongly favors dismissal. After their initial attempt to serve Ms. Johnson, the Plaintiffs did nothing for several months. Then, after the Children's Home refused to provide Ms. Johnson's address, the Plaintiffs again failed to act for almost a year. All told, Plaintiffs took seventeen months to cure their address-related confusion and achieve proper service. They did so only after the Court issued a Show Cause Order directing them to act. This evident lack of diligence counsels heavily against an extension.

As does the sixth factor. The Plaintiffs are not pro se litigants deserving of additional latitude. *See In re Love*, 3 F. App'x 497, 498 (6th Cir. 2001) ("'[C]lients must be held accountable for the acts and omissions of their attorneys.'") (internal citation omitted).

10

Finally, the seventh factor is minimally pertinent, as there are no applicable equitable considerations. Based on the foregoing, the balance of the *Oakland Physicians* analysis counsels against granting a discretionary extension of time.

### C

Given this conclusion, the Court briefly addresses its prior Order discharging the show cause. When the plaintiffs announced they had finally located Ms. Johnson's address, the Court granted them a brief extension. Now, however, Ms. Johnson has appeared and expressly requested dismissal. Further, the parties have provided additional detail that the Court was not privy to when it granted the short continuance. Faced with an explicit request for dismissal, and the additional information provided by the parties, the Court agrees with Ms. Johnson that the Plaintiffs have not shown good cause to overlook the delay. Accordingly, the Court will vacate its order at R. 40 granting the extension of time for service. *See Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders." (citing *Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1, 47–48 (1943) and *Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 88 (1922))).

### III

Without good cause or reason for a discretionary extension, the Plaintiffs' claims against Ms. Johnson must be dismissed for failure of service. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Ms. Johnson's Motion to Dismiss **[R. 46]** is **GRANTED**;

2. The Court's Order at **[R. 40]** is **VACATED**; and

3. The Plaintiffs' claims against Ms. Johnson are **DISMISSED without prejudice.**

This the 26th day of February, 2025.

Gregory F. Van Tatenhove
United States District Judge